# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CORPORATE AUTO RESOURCE
SPECIALISTS, LTD,

        Plaintiff,

v.

MICHAEL MASSON; SUBURBAN
MOTORS COMPANY, LLC D/B/A
COMPETITVE VEHICLE SERVICES;
BRIAN BLANKENSHIP; JAMES
MELTON, SR.; JAMES MELTON, JR.;
and LAURA ANN BLANKENSHIP

        Defendants.

_____/

Case No. 19-10452
DISTRICT JUDGE VICTORIA A. ROBERTS
MAGISTRATE JUDGE DAVID R. GRAND

## ORDER GRANTING THE MELTON DEFENDANTS' MOTION TO DISMISS

### I.    INTRODUCTION

Corporate Auto Resource Specialists, Ltd., ("Corporate Auto") alleges six Defendants implemented and engaged in a horizontal bid-rigging scheme to manipulate bid awards from Fiat Chrysler. James Melton, Sr. and James Melton, Jr. move to dismiss the claims against them for failure to state a claim upon which relief may be granted.

They say Corporate Auto: (1) engages in impermissible group pleading; and (2) fails to plead its fraud claims with particularity as required by Fed. R. Civ. P. 9(b).

The Court **GRANTS** the Melton Defendants' Motion to Dismiss. However, the Court grants Corporate Auto leave to amend its Complaint under Fed. R. Civ. P. 15(a)(2).

### II.    FACTUAL BACKGROUND

1

Defendants in this case are: Suburban Motors Company and two of its employees, Michael Masson and Laura Ann Blankenship; Brian Blankenship, an employee of FCA US, LLC ("Fiat Chrysler") and Laura's father; and the Meltons, former employees of LaFontaine Import Motors.

The facts stated here are taken from Corporate Auto's First Amended Complaint.

Corporate Auto provides commercial vehicle rentals and sales to various automotive manufacturers, OEMs (original equipment manufacturers), and other businesses including Fiat Chrysler. These customers seek such rentals or sales for reasons including vehicle testing, competitive research, benchmarking, events, promotions, etc.

Corporate Auto, an approved vendor with Fiat Chrysler, alleges the Defendants, primarily through orchestration by Brian Blankenship, Suburban Motors, and Michael Masson, implemented a horizontal bid-rigging scheme to manipulate bidding for business from Fiat Chrysler.

As a general overview, Fiat Chrysler solicits bids and/or proposals for its automotive leasing and purchasing business from its approved vendors. Fiat Chrysler issues a request for quote (RFQ), which identifies requirements and specifications, to its vendors through electronic and/or facsimile notices. Any approved vendor may submit a response. This is intended to be a competitive process by which Fiat Chrysler obtains the best price for the specific RFQ. Brian Blankenship had authority to award Fiat Chrysler business to vendors such as Corporate Auto, Suburban Motors, and the Meltons.

Corporate Auto alleges Brian Blankenship funneled insider and confidential information of Fiat Chrysler to Suburban Motors, Masson, and the Meltons, primarily by

using Laura Ann Blankenship as the conduit. This information included terms related to bids, business, and other information not available to Corporate Auto or other competitors.

The Meltons were employees of LaFontaine, also an approved vendor with Fiat Chrysler. They handled Fiat Chrysler automotive leasing and purchasing business. This working relationship ended after the Meltons were sued by LaFontaine in Oakland County Circuit Court for various claims, including stealing LaFontaine's trade secrets and proprietary information and using that information to wrongfully compete with LaFontaine and to acquire its business.

Corporate Auto alleges Masson made payments to the Meltons in the beginning of 2014 in furtherance of the scheme. Corporate Auto says it is more probable that these payments and wrongful activity continued after 2014 and into the present.

In addition to receiving payments, Corporate Auto says the Meltons coordinated with Suburban Motors and Masson to manipulate the Fiat Chrysler bid process. Corporate Auto says defendants also extensively communicated about their scheme through personal meetings, emails, and text messages sent or received. This scheme was furthered through the use of the mail system to send pertinent documents related to the bid.

The following claims are brought against the Meltons: Count III: Civil RICO Liability under 18 U.S.C. § 1962(d); Count IV: Tortious Interference with a Contract and Advantageous Business Relationship; and Count V: Civil Conspiracy.

**III.     LEGAL STANDARD**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. To survive a motion to dismiss, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredson,* 500 F.3d 523, 527 (6th Cir. 2007); *Twombly,* 550 U.S. at 555 (while detailed factual allegations are not required, a pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action").

## IV. DISCUSSION

### A. RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") CLAIM

In its original complaint, Corporate Auto alleged defendants violated all three substantive RICO subsections: 18 U.S.C. § 1962(a)-(c). Now, Corporate Auto has dismissed the substantive claims and pleads the defendants violated § 1962(d) by conspiring to violate § 1962(c). Although Corporate Auto does not plead any substantive RICO violation in its amended complaint, it makes several allegations that defendants violated § 1962(c).

Ultimately, in order to maintain a conspiracy claim under § 1962(d), Corporate Auto must prove: (1) each Melton is a "person" who conspired to violate § 1962(c); (2) each Melton understood the nature or unlawful character of the unlawful plan; (3) each Melton agreed to join with others to achieve the objective of the conspiracy during the relevant

time period; and (4) each Melton agreed that the enterprise would be conducted through a pattern of racketeering activity. O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions,* 153 (Vol. 3, 6th ed. 2013).

Corporate Auto cannot maintain a civil RICO conspiracy claim without proving a substantive RICO violation. *See Grubbs v. Sheakley Group, Inc.,* 807 F.3d 7885, 805-806 (6th Cir. 2015); *see also Heinrich v. Waiting Angels Adoption Servs. Inc.,* 668 F.3d 393, 411 (6th Cir. 2012). Accordingly, in order to allege a violation of § 1962(d), Corporate Auto must allege a violation of § 1962(c). This requires alleging: (1) the existence of an enterprise affecting interstate or foreign commerce; (2) each Melton was employed by or associated with the enterprise; (3) each Melton conducted or participated in the conduct of the enterprise's affairs; (4) each Meltons' participation was through a pattern of racketeering activity; and (5) Corporate Auto's business or property was injured because each Melton conducted or participated in the conduct of the enterprise's affairs. O'Malley, Grenig, Lee, *Federal Jury Practice and Instructions,* 149 (Vol. 3, 6th ed. 2013).

The Meltons say Corporate Auto's § 1962(d) claim is fatally pled in three ways: (1) Corporate Auto engages in impermissible group pleading that precludes the Court from conducting the necessary individualized inquiry into each Defendant's alleged liability; (2) Corporate Auto fails to properly allege that each of the Meltons committed at least two predicate acts to establish a pattern of racketeering activity; and (3) the amended complaint fails to plausibly allege that each Melton conducted the affairs of the alleged enterprise.

    a. **Corporate Auto Engages in Impermissible Group Pleading**

Preliminarily, the Meltons argue that Corporate Auto impermissibly grouped them together throughout the First Amended Complaint without specifically identifying each Melton Defendant. Defendants are correct.

The Meltons direct the Court to *Kerrigan v. ViSalus, Inc.,* 112 F.Supp.3d 580 (E.D. Mich. Jun. 12, 2015). In *Kerrigan,* plaintiffs grouped thirty-one different defendants together for each RICO allegation. *Id.* at 601. The court directed the plaintiffs to amend their complaint in order to present their RICO claims in a manner to allow the Court to appropriately evaluate their sufficiency with respect to each individual defendant. *Id.* at 601.

Corporate Auto attempts to distinguish its facts from *Kerrigan;* it asks the Court to consider that this case only involves six defendants, not thirty-one. It also points out that it has made specific allegations against the Meltons: (1) that they received wrongful payments resulting from their involvement in the alleged bid-rigging scheme; (2) that they conspired to hide the alleged scheme; (3) that they relied upon the mail system to obtain and transfer vehicle titles to complete their bid submissions. However, Corporate Auto fails to acknowledge that throughout its amended complaint, it never makes specific and individual allegations against James Melton, Sr. or James Melton, Jr.

Although Corporate Auto alleges the Meltons collectively committed these acts, this grouping of James Melton, Sr. and James Melton, Jr. as "the Meltons" throughout the Complaint is impermissible because "each [d]efendant is entitled to an individualized analysis of his, her, or its own RICO liability." *Kerrigan v. ViSalus, Inc.,* 112 F.Supp. at 602.

The Court cannot sufficiently evaluate Corporate Auto's RICO claim because it does not specifically identify what conduct is alleged against James Melton, Sr., or what conduct is alleged against James Melton, Jr.

### b. Corporate Auto Fails to Properly Allege Predicate Acts of Mail Fraud Against the Melton Defendants

To establish a substantive RICO violation under § 1962(c), Corporate Auto must show a "pattern of racketeering activity." *Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 795 (6th Cir. 2012). This, at a minimum, requires two acts of racketeering activity ("predicate acts") within ten years of each other. *Id.* Corporate Auto must also show that the predicate acts are related and amount to, or pose a threat of, continued criminal activity. *Id.*

Corporate Auto alleges the Meltons engaged in mail fraud in violation of 18 U.S.C. § 1341. Mail fraud consists of: (1) a scheme to defraud; and (2) use of the mails in furtherance of the scheme. *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

Corporate Auto bases its mail fraud allegations on its knowledge that bid submissions generally require the use of mail to complete and fulfill the job, e.g. receiving title or related documents from the seller. Corporate Auto, upon information and belief, alleges the Meltons committed mail fraud up to 300 times, the number of bid submissions it made itself during the relevant period, as it is "more plausible than not" that the Defendants used the mail to complete the fraud.

The Meltons challenge this in three ways: (1) Corporate Auto fails to plead mail fraud against each of them; (2) Corporate Auto fails to meet the heightened pleading standard under Fed. R. Civ. P. 9(b), which requires that allegations of fraud are pled with

7

particularity.; and (3) Corporate Auto fails to plead the alleged mail fraud was the proximate cause of its injury. Because of the heightened pleading standard, the Court need only address whether Corporate Auto satisfies Rule 9(b). It does not.

As the Meltons argue, Corporate Auto does not allege facts to show which of the Meltons caused what fraudulent statements to be mailed, or when the statements were mailed.

Corporate Auto says it meets this standard by pleading the year and date it submitted responses to Fiat Chrysler RFQs. This is insufficient. It is merely conclusory for Corporate Auto to list the dates it submitted bid responses and allege that, because the mail is generally used in connection with bid submissions, the Meltons likely committed fraud. It does not allege any dates the Meltons may have submitted bids or used the mail system in connection with bids either on their own, or on behalf of their employer, LaFontaine.

Fed. R. Civ. P 9(b) demands more: particularity with regard to the circumstances constituting fraud, such as what fraudulent statements were mailed, who mailed the statements, and why the statements were fraudulent. *Heinrich v. Waiting Angels Adoptions Services, Inc.,* 668 F.3d 393, 404 (6th Cir. 2012).

### B. Conducting the Affairs of the Enterprise

The Meltons say Corporate Auto makes only conclusory allegations that they conducted the affairs of the alleged enterprise. To sustain this cause of action on the pleadings, Corporate Auto must set forth allegations to establish the Meltons conducted or participated, directly or indirectly, in the conduct of the RICO enterprise's affairs. *Ouwinga,* 694 F.3d at 791. The Supreme Court requires proof that the defendant

participated in the "operation or management" of the enterprise. *Id.*; *see also Reves v. Ernst & Young,* 507 U.S. 170 (1993). This is not limited to those with primary responsibility; only "some part" in directing the enterprise's affairs is required. *Id.* This can also be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out. *Id.*

Corporate Auto's pleadings are insufficient. Because Corporate Auto alleges impermissible group pleadings, it does not sufficiently allege that the Meltons, individually, conducted the affairs of the enterprise. Corporate Auto alleges the Meltons made decisions on behalf of the enterprise and knowingly carried out decisions relative to the scheme; it does not allege what these decisions are, how these decisions were carried out, or, most importantly, which Melton Defendant made or carried out decisions.

### C. Corporate Auto's Tortious Interference Claim and Civil Conspiracy Claim Fail Because of Impermissible Group Pleading and Conclusory Allegations

The Meltons make three arguments against Corporate Auto's Tortious Interference claim: (1) Corporate Auto fails to allege anything specific about how the Meltons tortiously interfered with its business; (2) anything alleged would be barred by the statute of limitations; and (3) there is no allegation that Corporate Auto had a "contract" to be interfered with.

Corporate Auto simply says the Meltons "conspired" with other defendants to violate Michigan and federal antitrust law. This is not sufficient. No specifics are given concerning tortious conduct.

Additionally, Corporate Auto cannot maintain its civil conspiracy claim. A claim of civil conspiracy must be based on an underlying actionable tort. No tort is sufficiently pled. *The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust,* 262 Mich. App. 485 (2004).

## V. CONCLUSION

Corporate Auto already amended its Complaint once as a matter of right. Fed. R. Civ. P. 15(a)(1). This Amended Complaint is also deficient. Furthermore, other defendants in the case plan on filing motions to dismiss raising the same arguments as the Meltons. (ECF No. 30, PageID.481-482).

To properly and efficiently address the issues presented, the Court:

1. **GRANTS** the Melton Defendants' Motion to Dismiss without prejudice.
2. **ORDERS** Corporate Auto to file a Second Amended Complaint which addresses the concerns raised by all defendants.
3. **ORDERS** Defendants Michael J. Masson, Suburban Motors Company, Brian Blankenship, and Laura Ann Blankenship to refrain from filing motions to dismiss Corporate Auto's First Amended Complaint.

The schedule the parties are to adhere is:

1. **September 16, 2019**: Corporate Auto to file Second Amended Complaint;
2. **October 7, 2019**: Defendants to answer or otherwise respond;
3. **November 4, 2019**: Corporate Auto's response due if motions to dismiss are filed;
4. **November 11, 2019**: Defendants' replies due to Corporate Auto's response.

**IT IS ORDERED.**

Dated: August 29, 2019               s/ Victoria A. Roberts
                                     Victoria A. Roberts
                                     District Court Judge